IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| JOE W. HOCKADAY, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-0322 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff JOE W. HOCKADAY, JR., brings this cause of action pursuant to 42 U.S.C. §

405(g) seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting

Commissioner of Social Security (Commissioner), denying plaintiff's applications for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI).  For the reasons hereinafter

expressed, the undersigned United States Magistrate Judge recommends the Commissioner's

decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On or about June 13, 2012, plaintiff Joe W. Hockaday, Jr., protectively filed applications for

DIB and SSI benefits alleging a disability onset date of June 13, 2012 due to joint disease, memory

loss, arthritis, multiple epiphyseal dysplasia[1] and numbness in the arms and legs. (Tr. 12, 135, 139). The Commissioner denied benefits initially on September 18, 2012 and upon reconsideration on December 20, 2012. (Tr. 12, 50, 56, 48-49).[2] Upon plaintiff's request, a video hearing was held before an Administrative Law Judge (ALJ) on June 13, 2014. (Tr. 29-45). On the date of the hearing, plaintiff was 44 years old and had a high school education. (Tr. 33). Plaintiff had past relevant work as an animal control officer which the Vocational Expert (VE) listed as a light, skilled job performed at this level by plaintiff, and as an assistant groundskeeper at a country club, listed by the VE as a medium, semi-skilled job performed by plaintiff at the light level. (Tr. 34-35, 41-42). On August 6, 2014, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 12-24). Following plaintiff's unsuccessful administrative appeal of the ALJ's decision, plaintiff sought federal judicial review.

In reaching his decision, the ALJ followed the five-step sequential process in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At Step One, the ALJ determined plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 13, 2012. (Tr. 14). At Step Two, the ALJ found plaintiff to have the following severe impairments: "status post, bilateral hip replacement and back surgery; status post, right ankle surgery; pain disorder." (*Id.*). The ALJ found plaintiff suffered from the medically determinable physical impairments of hepatitis C and irregular heartbeat but the ALJ characterized these impairments as non-severe. (Tr. 15). While plaintiff was

---

[1] According to the U.S. National Library of Medicine, Genetics Home Reference page, multiple epiphyseal dysplasia is a disorder of cartilage and bone development primarily affecting the ends of the long bones in the arms and legs. https://ghr.nlm.nih.gov/condition/multiple-epiphyseal-dysplasia (2017).

[2] The undersigned notes that the ALJ refers to the date of the denial of benefits upon reconsideration as December 20, 2012, *See* Tr. 12, however, the records submitted by the defendant Commissioner reflect a date of December 18, 2012, *See* Tr. 48-49. Additionally, neither the initial denial of benefits nor the denial upon reconsideration records submitted to the Court contain an Explanation of Determination.

provisionally diagnosed with a learning disorder and Borderline Intellectual Functioning upon clinical interview and mental status examination, the ALJ did not find these to be firm diagnoses and did not consider them medically determinable impairments. (*Id.*). At Step Three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-18). The ALJ placed emphasis on Section 1.04 pertaining to disorders of the spine and Section 1.02, pertaining to major dysfunction of a joint. (Tr. 15). The ALJ found plaintiff did not have an inability to ambulate effectively as required by Section 1.02 for major dysfunction of a joint and found the file lacked evidence, *i.e.* no evidence of imaging of the spine, to confirm a disorder of the spine which meets Section 1.04. (Tr. 16).

At Step Four, the ALJ found plaintiff could not return to his past relevant work as an animal control officer or groundskeeper. (Tr. 22). At Step Five, based on the plaintiff's age, education, work experience, Residual Functional Capacity (RFC) determination and the VE's testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy at the unskilled, sedentary level including clerical mailer and assembler. (Tr. 23). Accordingly, the ALJ found plaintiff was not under a disability at any time between June 13, 2012, the alleged onset date, and August 6, 2014, the date of the decision.

II.
STANDARD OF REVIEW

A disability is defined as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). To determine

whether a claimant is disabled, the Social Security Administration (SSA) has established a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920.  First, the ALJ must determine whether the claimant is presently working at any substantial gainful activity, which is defined as work activity involving the use of significant physical or mental abilities for pay or profit, even if on a part-time basis. 20 C.F.R. § 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe and meets the duration requirements. 20 C.F.R. §§ 404.1520(c), 404.1509; *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  A severe impairment is defined as one which significantly limits an individual's mental or physical ability to meet the basic demands of work activity.  20 C.F.R. § 404.1520(c).  Third, the ALJ must find disability if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, an assessment of residual functional capacity is made and if claimant can still perform relevant work and has a vocational profile, claimant is not disabled. 20 C.F.R. § 404.1520 (a)(4)(iv).  Fifth, the impairment or combination of impairments must prevent the claimant from doing any work, when taking into consideration the claimant's age, education, and past work experience.   20 C.F.R. § 404.1520(a)(4)(v).  In the first four steps, the burden of proof rests with the claimant to show that he or she is disabled. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).  If claimant is able to satisfy his or her burden on steps one through four, the burden will shift to the Commissioner to show that other gainful employment exists that claimant is capable of performing despite the impairments. *Id.*

In reviewing disability determinations by the Commissioner, the Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the

Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Substantial evidence in the context of SSA determinations "is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

## III.
## ISSUES

The ALJ found plaintiff not disabled at Step Five of the five-step sequential analysis. Consequently, the court's review is limited to whether there was substantial evidence in the record,

taken as a whole, to support the finding that plaintiff had the ability to perform other work that exists in significant numbers in the regional and national economies, and whether proper legal standards were applied in making this determination.  Plaintiff presents the following issues for review:

1.      The ALJ committed reversible error in failing to adequately consider plaintiff's diffuse arthritis and retrocalcaneal exotosis[3] at Step Two and when formulating the RFC; and

2.      The ALJ's credibility determination was not supported by substantial evidence.

(Dkt. 17 at 2).[4]

IV.
MERITS

A.  *ALJ's RFC Determination*

Plaintiff argues the ALJ failed to discuss his medically determinable impairments of diffuse arthritis and ankle spur when discussing plaintiff's severe and non-severe impairments at Step 2 and contends this error was harmful because these impairments imposed more severe limitations than the ALJ accounted for in his RFC.  (Dkt. 17 at 10).  Plaintiff argues the ALJ error is clear because the ALJ provided reasons why plaintiff's impairments of hepatitis C and irregular heartbeat were not severe but failed to do so regarding the diffuse arthritis and ankle spur.  The ALJ made findings of fact and conclusions of law with regard to plaintiff's severe impairments stating:

According to *Stone v. Heckler* (cite omitted) the standard in determining whether the claimant's impairment is severe is: 'An impairment can be considered as not severe only if it is a slight abnormality (having) such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective

---

[3]Plaintiff's Brief defines retrocalcaneal exotosis as a painful bump or bone spur over the Achilles tendon *i.e.* an ankle spur, citing MEDICAL DICTIONARY (Farlex and Partners, 2009). (Dkt. 17 at 9-10).

[4]The undersigned notes that plaintiff lists three issues for consideration in his Memorandum of Law at page 1 however, this third issue is not addressed by plaintiff or defendant and appears to have been included in error. (Dkt. 17 at 4).

of age, education, or work experience.' The above impairments [status post, bilateral hip replacement and back surgery; status post, right ankle surgery; pain disorder] have more than a minimal effect on the claimant's ability to perform basic work-related activities. The claimant's records documented no other severe impairments under the *Stone* standard.

(Tr. 14).

Plaintiff first addresses the issue of ankle spur and argues, "...the ALJ noted that '[o]n March 6, 2014, Dr. Higgins found that the claimant had marked pain on weight-bearing and during ambulation, but this appeared to result from the condition of the foot.' Consequently, the ALJ acknowledged that Hockaday had a foot condition, but made no effort to explain how that foot condition was not sufficient to be classified as a severe impairment." (Dkt. 17 at 10 citing to Tr. 16). A review of the record shows that Dr. Eric Higgins, D.P.M., a podiatrist, examined plaintiff on February 12, 2013 and March 6, 2014. The ALJ noted this in his decision and more specifically stated, "The claimant had painful toenail, on February 12, 2013 (Exhibit 19F, page 4). On March 6, 2014, Dr. Higgins found that the claimant had marked pain on weight-bearing and during ambulation, but this appeared to result from the condition of the foot (See Exhibit 19F, page 2)." (Tr. 16). The ALJ went on to say,

> The medical records from primary care physician, David Thetford, D.O. do not demonstrate an inability to ambulate effectively. The undersigned notes no specific findings regarding gait over the course of Dr. Thetford's physical examinations during treatment (See Exhibits 9F, 13F, 17F and 18F). The evidence is not sufficient to establish that the claimant's impairments meet Listings 1.02 and 1.04.

(Tr. 16). A review of podiatrist Dr. Higgins's records shows that plaintiff was seen on February 12, 2013 for the first time for painful, thick and deformed toenails on all toes of both feet. (Dkt. 15-9 at 37, Tr. 400). Because plaintiff was unable to take oral antifungals due to his hepatitis C, he was given a topical ointment. (*Id.*). Plaintiff was seen again by Dr. Higgins on March 6, 2014 for a

toenail trim and at that time, plaintiff complained of left heel pain. (Dkt. 15-9 at 35, Tr. 398). The doctor noted plaintiff's toenails had marked thickening, discoloration and deformation and that they were painful on palpation, that plaintiff had moderate pain on palpation of the posterior aspect of the left heel and marked pain on weight bearing and during ambulation. (*Id.*). The doctor's medical notations, of course, are only a memorialization of petitioner's complaints of pain. Moreover, the plaintiff's marked pain on ambulation appears to have been due to his toenail infection, in light of the note that there was moderate pain on palpitation of the left heel. The doctor's notes also indicate plaintiff was there to have his toenails trimmed. While there, surgical treatment alternatives for excision of plaintiff's ankle spur were explained in detail and the doctor noted a conservative management plan with surgery as an option if the symptoms failed to improve. (Dkt. 15-9 at 35-36, Tr. 398-399). Nothing in the record indicates plaintiff ever sought or received surgery as treatment for his bone spur or that the spur condition worsened or even continued.

Plaintiff argues that although the ALJ acknowledged the foot condition, he failed to articulate how this condition was not sufficient to be classified as a severe impairment. Plaintiff claims this error was particularly egregious since marked pain with weight-bearing and ambulation would arguably pose more than a minimal limitation on plaintiff's ability to stand or walk for two hours as set out in the RFC. (Dkt. 17 at 10). Plaintiff complains the ALJ's failure to articulate how this foot condition was not sufficient to be classified as a severe impairment, especially in light of his reasoning of why plaintiff's conditions of hepatitis C and irregular heartbeat were not severe, can be interpreted as a failure to appropriately consider the foot condition severe in its own right. (Dkt. 17 at 13).

A severe impairment is one that more than minimally limits a claimant's physical or mental

ability to do basic work activities. This impairment must last continuously for at least a twelve month period. (Dkt. 18 at 8 citing *Barnhart v. Walton*, 535 U.S. 212, 217, 122 S. Ct. 1265, 1269, 152 L. Ed. 2d 330 (2002)). Defendant argues plaintiff has not demonstrated his ankle spur condition interfered with his ability to do basic work activities for a consecutive twelve month period. Both parties refer to a diagnostic image (x-ray) taken of plaintiff's left ankle on August 10, 2007 upon complaints of heel pain. (Tr. 305). A review of this record shows the x-ray was ordered by plaintiff's primary care physician David Thetford and listed the findings as, "Normal distal left tibia, fibula, talus and calcaneus, except for arthritic change at the anterior tibiotalar joint space. No acute fracture or dislocation." (*Id.*). The conclusion stated, "No acute fracture or dislocation. Arthritic spur on the anterior tibia just superior to the talus is noted. Normal calcaneus. No calcaneal spur. Thick insertion of the distal Achilles tendon is present." (*Id.*) As asserted by defendant, the record contains no further reference to heel pain until the March 2014 visit to podiatrist Dr. Higgins as set out above. (Dkt. 18 at 10 citing Tr. 398). The record shows plaintiff went to the Texas Rehabilitation Commission for a Disability Determination on August 29, 2012 and was evaluated by Dr. Mary Burgesser. (Tr. 220-222). The ALJ referenced the evaluation by Dr. Burgesser who found plaintiff to have normal motor strength, muscle strength, sensation and reflexes, as well as a normal gait with no disturbance, status post ankle surgery. (Dkt. 15-3 at 17 citing Tr. 220-222). The ALJ also relied upon the records of plaintiff's primary care physician Dr. David Thetford. Dr. Thetford's records, dated between December 22, 2009 and February 13, 2014, show plaintiff sought treatment for various conditions including, bacterial conjunctivitis, infectious blepharitis and painful eye (all eye conditions), cough, sore throat, influenza, irregular heartbeat, rash, hip pain, itchy/sweaty testicles, wrist pain and prescription refills. Every medical record by date included the same medical

history list with a notation of "left heel pain, possible bursitis." Other than Dr. Higgins, the records do not reflect that plaintiff ever presented to a doctor specifically for complaints of left heel pain. (Tr. 297-303, 312-327, 365-381 and 385-394). Moreover, it does not appear this condition was specifically addressed in any treatment notes and there is no indication the ankle spur required follow up treatment. (*Id.*). Even so, the ALJ refers to treatment by podiatrist Dr. Higgins noting his condition of the foot, painful toenail and marked pain upon weight bearing and during ambulation. (Tr. 16). The ALJ noted however, that plaintiff only saw the podiatrist twice. In so doing, plaintiff's treatment included a toenail trim and the prescription of a topical fungal medication. The ALJ relies upon the records of consultative examiners Dr. Dr. Burgesser and Dr. Gradel who both found a normal gait with no disturbances. (*Id.*). The ALJ also references plaintiff's long-treating physician Dr. Thetford whose records do not contain an inability to ambulate effectively. (*Id.*).

Assuming *arguendo* the ALJ erred in not discussing plaintiff's impairments of bone spur/painful heel/foot condition in relation to whether it was severe or not severe the error was harmless. First, the record shows plaintiff did not allege, as a medical condition, any impairment related to his left foot of a bone spur, nail deformities/infections or heel pain. (Tr. 139). At the hearing, when questioned by his counsel regarding his various impairments the conversation included references to his hepatitis C, both hip replacements due to his epiphyseal dysplasia, pain and discomfort in his hips, right ankle, back and all joints including his hands/wrists and arms, shoulders, elbows, knees and ankles due to arthritis. (Tr. 35-41).

Since plaintiff himself did not allege, in his application or in his testimony at the administrative hearing, that he suffers from a severe or even a non-severe impairment related to his left foot it does not appear the ALJ reversibly erred in failing to discuss this impairment in more

detail than outlined above.  However, to the extent error is assumed, any such error was harmless.

Plaintiff also contends the ALJ erred by failing to discuss or explain why his diffuse arthritis was not found to be a severe impairment.  Plaintiff cites to his treating physician Dr. Thetford's records to show he suffered from diffuse arthritis, a decreased range of motion in his shoulders, hips and knees, a deformity of the left wrist and tenderness in his right hip. (Dkt. 17 at 14 citing Tr. 298, 371, 373, 376, 379, 386).  Plaintiff argues the ALJ failed to explain how his diffuse arthritis was not severe and further failed to explain how his diffuse arthritis was accommodated in the RFC. Plaintiff challenges the ALJ's decision to reduce the RFC from light, as recommended by State Agency medical consultant Dr. James Wright, to sedentary based upon plaintiff's pain allegations without further postural or manipulative limitations. (Dkt. 17 at 14).  Plaintiff also takes issue with the ALJ's assessment of his ability to ambulate effectively based on Dr. Thetford's failure to make any specific findings regarding plaintiff's gait and argues this lack of a finding does not imply normal gait.  (*Id.*).      Defendant counters that the mere presence of a condition says nothing about its severity.  Defendant also argues plaintiff has failed to articulate how these medical findings caused additional limitations on his ability to work.  (Dkt. 18 at 11).  Defendant argues Dr. Thetford's prescription for pain medication, Meloxicam, combined with plaintiff's testimony at the hearing that this medication dulled his pain supports the position that pain which is responsive to therapeutic treatment cannot be classified as a disabling condition.  (*Id.* citing Tr. 40 and *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)).

As set out above, the medical records in this case show and the ALJ found plaintiff to suffer from the severe impairments of status post, bilateral hip replacement and back surgery, status post, right ankle surgery and pain disorder.  (Tr. 14).

As recited above, Dr. Thetford attended to plaintiff on multiple occasions between 2009 and 2014 for various health issues. ( Tr. 297-303, 312-327, 365-381 and 385-394).  During this period, Dr. Thetford's records, referenced and considered by the ALJ, contain notations for the conditions of diffuse osteoarthritis, decreased range of motion in the shoulders, hips and knees, wrist and joint pain as follows:

> October 4, 2012 - Presents with "red eye," - upon examination shows a decreased range of motion noted in shoulders, hips and knees assessed as diffuse osteoarthritis and the doctor states, "The pattern of joint symptoms has been episodic flare-ups with symptom-free periods in between" - prescribed Maxitrol Ophthalmic Suspension drops for his eye and Celebrex[5] (Tr. 297-298);

> March 8, 2013 - Presents with cough and congestion - upon exam complains of pain with range of motion in the shoulders, noted to be taking Celebrex and prescribed the antibiotic Zithromax for his cough and congestion  (Tr. 378-379);

> May 17, 2013 - Presents with congestion - upon examination shows a decreased range of motion noted in shoulders, hips and knees, a deformity of the right medial wrist and right lateral hip tenderness, assessed as diffuse osteoarthritis and it is again noted the pattern of joint symptoms has been episodic flare-ups with symptom-free periods in between, noted to be taking Meloxicam[6] and a refill of Zithromax is ordered (Tr. 375-377);

> October 25, 2013 - Presents with joint and hip pain -  upon examination shows a decreased range of motion noted in shoulders, hips and knees with no significant loosening, noted to be taking Meloxicam and ordered to continue, prescribed Hydrocodone/Acetaminophen for pain and recommended isometric exercises (Tr. 370-371);

> February 6, 2014 - Presents with right wrist pain due to knot, described by plaintiff as "constant and moderate in intensity [with] the initial onset of discomfort was several days ago"- x-ray is ordered and doctor notes plaintiff has an appointment with orthopedist in 2-3 months but may consider referral sooner if pain continues (Tr. 388-389);

---

[5]Celebrex is a nonsteroidal anti-inflammatory drug (NSAID) used to treat arthritic pain among other conditions. *See* http://www.drugs.com/celebrex.html (2017).

[6]Meloxicam is a nonsteroidal anti-inflammatory drug (NSAID) used to treat arthritic pain among other conditions. *See* http://www.drugs.com/celebrex.html (2017).  This drug appears to be a substitute for Celebrex.

> February 13, 2014 - Presents for prescription refills for diffuse osteoarthritis - notes read, "The discomfort is moderately severe. The pattern of joint symptoms has been episodic flare-ups with symptom-free periods in between. Awaiting appointment with Dr. Albrecht in April. Chronic right hip pain with replacement wearing out. Has both hips replaced but right wearing out faster than left." - was noted to be on Meloxicam and Hydrocodone and the latter was refilled (Tr. 385-387).

On January 30, 2012, plaintiff visited another of his treating physicians, Dr. Richard F. McKay who made the following notes:

> [Plaintiff] came in because his shoulder has been bothering him and it has been a year and a half since we checked his bilateral total hips. He says that his left shoulder just aches, particularly if he is driving a car and he sits there it will ache.

> PE: He has full range of motion in his shoulder with no limitation. There is some tenderness in the bicipital groove but not much different than the other side.

> X-ray: I took an AP and lateral x-ray of the left shoulder and I see no evidence of degenerative changes or bony abnormalities. I took an AP and lateral x-ray of the right hip and I see no evidence of loosening, osteolysis[7], or problems with components of the uncemented total hip. I took an AP and lateral x-ray of the left hip and it appeared that the humeral head may be more superior but I related to prior x-rays and there really has been no change but I do think that we need to keep an eye on it.

> Assessment: I think that he has some tendonitis of the left shoulder.

> Plan: I told him to take two Aleve with breakfast and two with supper for about a month if it didn't bother his stomach and then start weaning off of that. If that doesn't make it better, I told him to come back in and we will consider an injection. I will have him make an appointment for one year and we will continue with annual follow up visits on his bilateral hips.

> DX: Tendonitis left shoulder, Bilateral total hips.

(Tr. 226). There is nothing in the record to indicate plaintiff returned for an injection. Plaintiff did revisit Dr. McKay, however, on January 31, 2013 for his annual check up with complaints of right hip popping when he turns, maybe once or twice a week, and achy left hip pain occurring almost

---

[7]Osteolysis is defined as dissolution of bone; applied especially to the removal or loss of the calcium of a bone. *Dorland's Medical Dictionary.*

every day. (Tr. 352). Plaintiff informed the doctor he was unable to carry out his work activities, was not employed at that time, was limited in what he could do and had filed for disability. (*Id.*). Upon taking an x-ray the doctor noted, "I took an AP and lateral of the right hip and see no evidence of loosening, osteolysis, or problems with components of the uncemented total hip. I took an AP and lateral of the left hip and the femoral head is riding higher than originally, but no change in the last year. I did caution him that if something changes abruptly, not to put it off getting it checked. But I don't see any signs of osteolysis or loosening. I told him I was retiring in June and the right hip probably doesn't need to be followed, but the left hip probably does." (*Id.*).

Plaintiff has not identified any medical determination by the ALJ which conflicted with the opinions of treating physicians Dr. McKay, Dr. Thetford or Dr. Higgins's notes that his pattern of joint symptoms includes episodic flare-ups with symptom-free periods in between and that such condition was treatable with medication. There is no finding by any medical person indicating plaintiff's diffuse arthritis was severe to the degree he was not capable of working. Plaintiff's primary complaint about the arthritis, of course, is the pain and the ALJ considered plaintiff's pain disorder. While the ALJ, based on the evidence, could have found the arthritis itself also severe, the failure to do so was not reversible.

Plaintiff would have the Court find that the ALJ erred because he failed to discuss plaintiff's diffuse arthritis in more detail and instead referred to it only in passing when he found no severe impairments except those he listed referring to *Stone v. Heckler*. However, any such error was harmless. The ALJ addressed plaintiff's subjective complaints of pain, caused by the diffuse arthritis and his other conditions, quantified the level of pain and found plaintiff's subjective complaints not entirely credible in light of the objective medical evidence, plaintiff's ability to perform activities

of daily living and the fact that plaintiff's last day of work, immediately prior to his onset date, was, "Because of other reasons... Had problems with my company." (Tr. 139).[8]

### B.  ALJ's Credibility Determination

Plaintiff next claims the ALJ erred in his credibility determination.  Specifically, plaintiff argues the ALJ's finding that plaintiff's allegations were inconsistent with the objective evidence, that plaintiff's reported activities were inconsistent with disability, that plaintiff had been able to work after his surgeries and that plaintiff had stopped working for reasons other than physical inability are without substantial evidentiary support.  (Dkt. 17 at 15).

When the uncontroverted medical evidence demonstrates a basis for claimant's subjective complaints, "the ALJ's unfavorable credibility determination will not be upheld unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Wilson v. Barnhart*, 129 F. App'x 912, 914 (5th Cir. 2005).  While "[a]n ALJ 'is bound to explain his reasons for rejecting a claimant's [subjective complaints],' he is not required to 'follow formalistic rules in his articulation.'" *Hernandez v. Astrue*, 278 F. App'x 333, 339 (5th Cir. 2008).  The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 18).

Relying on the objective medical evidence of record as set forth above, the ALJ specifically referenced x-rays of plaintiff's left ankle performed August 10, 2007 which were

---

[8]The Court acknowledges the fact that plaintiff left his job as an animal control officer not as a result of disability, but for other reasons.  While the ALJ may consider that he left for reasons other than being disabled in assessing credibility, he could not make an adverse credibility finding based upon mere allegations of misconduct.

primarily normal except for an arthritic spur and an MRI of plaintiff's right ankle performed August 29, 2012 showing evidence of a prior surgery but otherwise finding the ankle to be normal. (Tr. 19). The ALJ referenced the medical records of Dr. McKay who treated plaintiff intermittently and who found a normal left shoulder upon x-ray, who did nothing more than advise plaintiff to take over the counter pain medication while keeping an eye on his left hip, but not the right hip, with the possibility of future injections, and who found upon x-rays no signs of osteolysis or loosening of the hips. (*Id.*). The ALJ chose to give little weight to the portion of Dr. McKay's records indicating plaintiff is not able to carry out work activities and is limited in what he is able to do to the extent those notations were inconsistent with the state agency findings. (Tr. 20-21). The ALJ said a finding of whether an individual is disabled or unable to carry out work is reserved to the Commissioner. (*Id.*).[9]

The ALJ referenced Dr. Thetford's treatment records noting plaintiff's pattern of joint symptoms were episodic with symptom-free periods. (Tr. 19). The ALJ said the doctor documented pain with range of motion and some decreased range of motion in the shoulders, hips and knees, but that he opted to treat these symptoms with medication. (*Id.*). The ALJ also cited to the records of consultative examiner Dr. Burgesser who found plaintiff's physical examination to be primarily normal and found no neurological abnormality, and Dr. Gradel, who diagnosed plaintiff with pain disorder due to his medical condition with provisional diagnoses of learning disorder and Borderline Intellectual Functioning, and who noted a GAF of 71 stating plaintiff's emotional disorder would improve when the pain condition improved or was resolved.

---

[9]It could be argued the medical record notation, taken in context, was not actually a medical finding but a recitation of plaintiff's statements. The notation reads, "He says the left hip hurts pretty much every day there is some achy pain. He is not able to carry out his work activities and right now is not employed. He has applied for disability. He is limited in what he can do. (Tr. 352). Interpreted this way the argument is a non-issue.

(Tr. 19-20). The objective medical evidence of record does not support the degree of limitation alleged by plaintiff and the ALJ appropriately gave greater weight to the objective evidence than to plaintiff's subjective complaints.

As the ALJ pointed out, after plaintiff's hips and ankle surgeries plaintiff was able to work as a groundskeeper from 2002-2006 and as an animal control officer from 2006-2012. (Tr. 20). The ALJ concurred with State agency psychologist Matthew Wong, Ph.D., who determined, based upon a review of plaintiff's medical records and the consultative examinations, plaintiff could understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others and respond to changes. The ALJ found this medical opinion to be consistent with the RFC for no more than semi-skilled work. (Tr. 21-22).

While the ALJ found plaintiff's allegations of pain to be credible to a degree, he noted plaintiff's own recitation of his daily living activities to Dr. Gradel included the ability to sleep well, make his own bed, help around the house, independently care for his own hygiene, drive, prepare basic meals, manage finances, shop with his wife and attend church. (Tr. 20). This finding combined with plaintiff's work history, post surgeries, according to the ALJ, supported a finding of the ability to perform sedentary work. (*Id.*).

Pain can constitute a disabling impairment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). However, pain is disabling only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990). By itself, the fact a plaintiff may suffer some pain while working is not enough to support a finding of disability. *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983). Rather, "[p]laintiff

must show that he is so functionally impaired that he is precluded from engaging in substantial gainful activity." *Id.* (citations omitted).  In determining whether pain is disabling, "the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco*, 27 F.3d at 163.  The decision whether plaintiff's pain is disabling rests soundly within the discretion of the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988).

The ALJ referred to the determination by James Wright, M.D., a State agency medical consultant, that plaintiff retained the capacity to do a full range of light work.  The ALJ, however, chose to rely on a different interpretation of earlier records and evidence in the form of credible testimony by plaintiff at the administrative hearing consistent with medical evidence in the record to conclude claimant's impairments were more limiting than was concluded by State examiners.  The ALJ then found plaintiff was only capable of sedentary work.  (Tr. 21).

As recited above, the ALJ did find plaintiff's complaints of pain to be credible to the extent light work was not an option but not to the degree that sedentary work was eliminated.  The ALJ did not find plaintiff's pain to be disabling.  In fact, the ALJ found plaintiff's complaints of pain beyond the level of pain accounted for in the RFC determination were not credible.  This determination is within the ALJ's discretion, *see Hollis*, 837 F.2d at 1387, and plaintiff has not shown the ALJ's determination was an abuse of that discretion.

In any event, it was within the discretion of the ALJ to accept the objective medical evidence and opinions of treating and examining physicians over plaintiff's subjective complaints.  *See Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977).  Because every portion of the RFC determination plaintiff challenges has the evidentiary support required, in the form of objective medical tests and diagnoses and opinions of treating and examining physicians, the ALJ's enunciated

reasons for denying plaintiff benefits despite his complaints of pain and disability indicate the ALJ did not abuse his discretion. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *Anderson*, 887 F.2d at 633.

## V.
## CONCLUSION

Plaintiff does indeed have medical issues and those issues/impairments are significant enough to cause pain limiting plaintiff to sedentary work. Even while performing sedentary work, plaintiff will not be pain free, but as found by the ALJ, he is not totally disabled.

The Court agrees with plaintiff that the issue is not merely whether the ALJ failed to include the ankle spur and arthritis in the Step Two analysis. The issue is whether the ALJ recognized those two impairments and considered their effect throughout his analysis on the RFC determination. The Court is of the opinion that the ALJ's discussion of plaintiff's pain disorder as a severe impairment was sufficient. The pain plaintiff suffers is not segregated based upon which impairment causes it. The ALJ analyzed plaintiff's pain overall. Even then, the ALJ noted plaintiff's ankle spur and arthritis. (Tr. 19-20).

If the failure to find plaintiff's ankle spur and arthritis severe at Step Two was error, it was harmless in light of the consideration by the ALJ of plaintiff's pain and the determination that he (plaintiff) was limited to sedentary work.

## VI.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff JOE

W. HOCKADAY, JR., not disabled and not entitled to disability benefits be AFFIRMED.

VII.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____ /5th_ day of March 2017.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).